UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HECTOR RUBALCABA,<br><br>        Plaintiff,<br><br>vs.<br><br>DUSTIN WITT; ERIC MORIAS; JOE DELIMAN; and MARK PAZIN,<br><br>        Defendants. | Case No. 1:13-cv-00408-RRB<br><br>**ORDER DISMISSING COMPLAINT**<br>**and**<br>**REVOKING *IN FORMA PAUPERIS*** |

Hector Rubalcaba, a California parolee appearing *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. § 1983 against various officers of the Merced County (California) Sheriff's Department. Rubacaba is currently being held in custody at the Merced County Jail. Rubancaba's claims arose out of the incidents preceding his arrest.[1]

## I.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1]        Although it is not entirely clear from the Complaint, it appears that Rubalcaba is currently being held in pre-trial custody following his arrest.

[2]        28 U.S.C. § 1915A(a).

"frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3]  Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6]  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7]  Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any

---

[3]        28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4]        42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) (holding that "proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules).

[5]        *See Booth v. Churner*, 532 U.S. 731, 734 (2001).

[6]        Fed. R. Civ. P. 8(a)(2).

[7]        *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

DISMISSAL ORDER and REVOCATION OF *IN FORMA PAUPERIS*
*Rubalcaba v. Witt, et al.*, 1:13-cv-00408-RRB – 2

doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

Section 1983 suits do not support vicarious liability, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his or her rights.[9]  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[10]  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[12] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13]

---

[8]     *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[9]     *Iqbal*, 556 U.S. at 677; *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691–95 (1978) (rejecting the concept of *respondeat superior* in the context of § 1983, instead requiring individual liability for the violation); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of ... subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Citations omitted)).

[10]    *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[11]    *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[12]    *Id.*

[13]    *Id.* (quoting *Twombly*, 550 U.S. at 555).

## II.      GRAVAMEN OF COMPLAINT

Rubalcaba alleges that Defendants Witt and Macias unnecessarily used excessive force in apprehending him—more specifically that they shot at him during an investigatory stop with an intent to kill.  Rubalcaba further alleges that Defendant Deliman falsified a police report "covering up" the misconduct by Defendants Witt and Macias.  Rubalcaba contends that Defendant Pazin, the Sheriff of Merced County, made exaggerated statements at a press conference as part of an alleged conspiracy to "cover up" the misconduct of Defendants Witt and Macias and inflame any potential jury.

## III.     DISCUSSION

Rubalcaba alleges that Defendants Witt and Macias placed their vehicle at an angle in front of Rubalcaba's parked vehicle as though to block his forward progress.[14]  Witt and Macias, allegedly based upon false information provided by an untested and unreliable informant that Rubalcaba was armed,[15] approached Rubalcaba's vehicle with their guns drawn.  According to Rubalcaba, when the officers approached, he started his engine, placed his gearshift into what he believed to be reverse but instead was in neutral, then revved the engine.  Rubalcaba immediately placed the gearshift in reverse and his vehicle "darted"

---

[14]      Witt and Macias were allegedly investigating a stalking complaint made by Rubalcaba's ex-girlfriend, a crime for which Rubalcaba has not been charged.

[15]      The unidentified informant allegedly advised the officers that Rubalcaba "was willing to shoot a cop before going back to prison."

backward.  At this point, as at least one of the officers started shooting at him, Rubalcaba ducked down to avoid being hit and backed into another vehicle parked across the street. According to Rubalcaba, at this point the officers ceased firing.  Rubalcaba then placed his gearshift into drive, "turned to my left, jumping onto the sidewalk and somebody's front lawn as made a u-turn to again escape detectives and their deadly attack."  At this point the officers resumed shooting at him and, as Rubalcaba was driving away from the scene, a bullet hit him in the back of the neck.  Although Rubalcaba managed to escape the immediate area, he later crashed his vehicle and was apprehended by the officers of the Merced Police Department.   At the time of Rubalcaba's apprehension, it was determined that he was unarmed.

"[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."[16]  As defined in the Ninth Circuit, deadly force is force that is either likely to cause death or creating a substantial risk of causing death or serious bodily injury.[17]   In this case, Defendants Witt and Macias unquestionable used deadly force.  As the Ninth Circuit has observed in cases in which force is used:

---

[16]     *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *see Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that excessive force in the course of an arrest , investigatory stop, or other "seizure" of a person is governed by the Fourth Amendment's "objective reasonableness," not substantive due process).

[17]     *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 n.9 (9th Cir. 2005).

All claims of excessive force, whether deadly or not, are analyzed under the objective reasonableness standard of the Fourth Amendment as enunciated in *Graham* and *Garner*. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). This balancing test entails consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*[18]

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather with the 20/20 vision of hindsight."[19] In *Garner* the Court explained that while it is unreasonable to apprehend an unarmed, nondangerous suspect by killing him, an officer's use of deadly force to prevent escape satisfies Fourth Amendment standards "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."[20]

Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened

---

[18]     *Id.* at 1115.

[19]     *Graham*, 490 U.S. at 396.

[20]     *Garner*, 471 U.S. at 3.

infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.[21]

In this case, even accepting Rubalcaba's conclusory allegation that the informant was "untested" and "unreliable" as true on its face, his own actions as recited in the verified Complaint gave rise to probable cause to believe that Rubalcaba posed a threat of serious physical harm to others, if not the officers themselves. Viewed objectively as observed and perceived by the officers, Rubalcaba's act of revving the engine (even if, as Rubalcaba alleges, inadvertently), immediately backing away, striking another vehicle, making a u-turn during which he jumped a curb and ran across a person's yard, and then sped away: (1) tended to verify the informant's statement that implied Rubalcaba would risk the lives of others to prevent his re-arrest; and (2) that the manner of his flight presented a threat of serious physical harm to others. Rubalcaba's claim that he feared for his life because he "had no idea why they opened fire on [him], [his] only guess [was] that they set out to kill him" is not only implausible, but inherently incredible. Rubalcaba provides no reason for harboring such a fear.[22]

Reduced to their essence, Rubalbaca's allegations against Deliman, the internal affairs investigative officer, is that he improperly led Witt and Marias in questioning them during

_____

[21]      *Id.* at 11–12; *see Brosseau v. Haugen*, 543 U.S. 194, 197–98, 200 (2004) (applying *Garner* and *Graham* under similar circumstances).

[22]      Indeed, it provides additional support for the informant's information concerning Rubalcaba's intent not to willingly accept return to prison.

his investigation into the shooting, allowing them to "clean up" their stories. Rubalbaca also alleges that Deliman provided Rubalbaca a falsified copy of Rubalbaca's paperwork. Specifically, Rubalbaca alleges that the copy he was furnished included face sheet listing his charges including a charge of "solicitation to commit rape or sexual assault" highlighted. When Rubalbaca questioned this, he was given a corrected sheet that read "solicitation to commit murder." Rubalbaca surmises that the copy initially given him was intended to expose him to the risk of serious injury from other inmates. Given that there is no allegation that the sheet with the incorrect charge was ever published to anyone other than Rubalbaca, how Rubalbaca reached, or anyone else for that matter could reach, this conclusion is unexplained and inexplicable. Rubalbaca's allegations against Deliman fall far short of pleading a viable § 1983 claim, or, for that matter, even a claim under state law.

Rubalcaba's allegations against Pazin, the Sheriff, even liberally construed in Rubalcaba's favor is at most state an action for slander, not a violation of his civil rights under § 1983. To the extent that Plaintiff alleges that the actions of Defendants violated state law, § 1983 does not provide a cause of action for those claims.[23] This Court declines to exercise its supplemental jurisdiction over the state law claims.[24]

---

[23]     *Loftis v. Almagar*, 704 F.3d 645, 647 (9th Cir. 2012) (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

[24]     "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . .." 28 U.S.C. § 1367(c).

DISMISSAL ORDER and REVOCATION OF *IN FORMA PAUPERIS*
*Rubalcaba v. Witt, et al.*, 1:13-cv-00408-RRB – 8

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, any appeal in this matter would be frivolous or taken in bad faith and Rubalcaba's *in forma pauperis* status is appropriately revoked.[25]

## IV.   ORDER

**IT IS THEREFORE ORDERED** that the Complaint on file herein is hereby **DISMISSED**, without leave to amend.

**IT IS FURTHER ORDERED** that Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED** this 18th day of June, 2013.

> S/RALPH R. BEISTLINE
> UNITED STATES DISTRICT JUDGE

---

[25]     28 U.S.C. § 1915(a)(3); *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of *in forma pauperis* status is appropriate if the appeal is frivolous).

DISMISSAL ORDER and REVOCATION OF *IN FORMA PAUPERIS*
*Rubalcaba v. Witt, et al.*, 1:13-cv-00408-RRB – 9